IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRIAN J. LANDRY** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CAUSE NO. 1:10CV25 LG-RHW** |
| | § | |
| **G.C. CONSTRUCTORS,** | § | |
| a joint venture | § | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion [34] for Partial Summary Judgment filed by Plaintiff Brian J. Landry. Landry asks the Court to declare that certain facts were conclusively established during the administrative proceedings regarding his employer and its insurance carrier's application to shift liability for his Longshore and Harbor Workers' Compensation Act benefits to the special fund. The issue has been fully briefed. After due consideration of the arguments and the relevant law, it is the Court's opinion that collateral estoppel should not apply. Accordingly, the Motion will be denied.

FACTS AND PROCEDURAL HISTORY

Landry alleges he was working as a crane operator aboard a barge/vessel, owned by G.C. Constructors on May 29, 2007, while the vessel was in Biloxi Bay for the construction of the Biloxi Bay bridge. Landry slipped and fell in hydraulic oil that had leaked from the crane, sustaining injuries to his spine.

G.C. Constructors and its insurance carrier began paying temporary total disability LWHCA benefits shortly after Landry was injured. When he reached maximum medical improvement, G.C. Constructors and its insurance carrier applied

to the District Director for relief under 33 U.S.C. § 908(f) for liability for permanent total disability benefits. Landry asserts in this Motion that certain facts were established when the District Director issued the Compensation Order - Award Under Section 8(f). These facts are: 1) Landry's average weekly wage of $1,869.47, 2) that he is totally and permanently disabled, 3) the date of injury, 4) the occurrence of injury and 5) compensability under the LHWCA.[1] Landry asks for partial summary judgment on those issues, and requests that G.C. Constructors be estopped from attempting to re-litigate them at the trial of this Section 905(b) case. After the parties filed a stipulation of certain facts, the only issues remaining for application of collateral estoppel are Landry's weekly wage and that he is totally and permanently disabled.

DISCUSSION

The LHWCA Proceedings

Every employer of maritime workers is liable for and must secure compensation payments to their employees. 33 U.S.C. § 904. Employers may fulfill this duty by either obtaining insurance from Department of Labor authorized insurance carriers or by qualifying as a self-insurer. *See* 33 U.S.C. § 932. "The insurance relationship under the LHWCA is closely regulated for the security, prompt provision, and convenient supervision of payments of benefits to the worker," and "[t]he carrier of record for the entity ultimately determined to be the responsible employer under the LHWCA must

---

[1] The parties entered into a stipulation that Landry 1) had an accident, 2) on May 29, 2007, and 3) was a worker covered by the LHWCA. *See* Joint Stipulation, Sept. 13, 2010, ECF No. 20. Accordingly, these matters are established for purposes of this litigation.

bear the liability for the compensation of the claimant." *Temp. Emp't Servs. v. Trinity Marine Grp.*, 261 F.3d 456, 464 (5th Cir. 2001).

Section 8(f) of the LHWCA, 33 U.S.C. § 908(f), was enacted to "prevent discrimination against handicapped employees and to encourage their employment by limiting the liability of the employer who hires a handicapped worker with knowledge of his disability." *Am. Bridge Div., U.S. Steel Corp. v. Dir., OWCP*, 679 F.2d 81, 82 n.3 (5th Cir.1982). Under the Act's aggravation rule, if an employment injury aggravates, accelerates, exacerbates, contributes to, or combines with, a previous infirmity, disease or underlying condition, the employer is liable for compensation for, not just the disability resulting from the employment injury, but the employee's total resulting disability. *Ceres Marine Terminal v. Hinton*, 243 F.3d 222, 226 (5th Cir. 2001) (citing *Strachen Shipping Co. v. Nash*, 782 F.2d 513, 517 (5th Cir. 1986)). Where certain conditions are met, § 8(f) limits an employer's compensation liability, with any additional compensation being paid from the special fund established by § 44 of the Act. *Ceres Marine Terminal*, 243 F.3d at 226 (citing 33 U.S.C. § 944).

The statutory language of § 8(f) states that "any request ... for apportionment of liability to the special fund ... and a statement of the grounds therefore, shall be presented to the [district director] prior to consideration of the claim by the [district director]." 33 U.S.C. § 908(f)(3). This provision ensures that the district director will have a full and fair opportunity to defend the fund from a § 8(f) claim. *Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co.*, 230 F.3d 126, 129 (4th Cir. 2000). As

administrator of the special fund, the Director has an obligation to protect it from unjustified claims. *Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co.*, 676 F.2d 110, 113 (4th Cir. 1982) (citing *Dir., OWCP v. Donzi Marine, Inc.*, 586 F.2d 377 (5th Cir. 1978)). However, the evidence relating to an 8(f) application is construed liberally in favor of the employer. *Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co.*, 737 F.2d 1295, 1298 (4th Cir. 1984).

In this case, C.G. Constructors and its insurance carrier were able to show the Director that Landry had a pre-existing permanent partial impairment to his body, which contributed to his current permanent and total disability status. Accordingly, the Director found that § 8(f) applied to Landry's claim, and the special fund would have liability for Landry's benefits on and after November 17, 2010. Pl. Mot. Ex. 9, ECF No. 34-9. The Director made the following relevant factual findings:

> 3. At the time of his injury, Claimant had an average weekly wage of $1,869.47 with a corresponding initial compensation rate of $1,114.44 per week not including Section 10(f) adjustments.
>
> 4. Claimant had a pre-existing permanent partial impairment to his body which contributed to his current Permanent and Total Disability (PTD) status.
>
> 5. The Director has found that Section 8(f) applies to this claim and that the employee reached Maximum Medical Improvement (MMI) on November 18, 2009. Employer/Carrier's liability is limited to 104 weeks of compensation beyond the MMI date. Employer/Carrier's liability is as follows:
>
> . . .
>
> 6. The Special Fund's liability for benefits begins on November 17, 2010 for Permanent & Total Disability and will continue pursuant to the Act.

Mot. Partial Summ. J. Ex. 9, ECF No. 34-9.

Preclusive Effect of Findings Made in LHWCA Proceedings:

Because approval of G.C.'s 8(f) application is a federal administrative decision, federal principles of collateral estoppel are applicable. *Johnson v. United States*, 576 F.2d 606, 612-13 (5th Cir. 1978). Issues of fact litigated and decided in a prior administrative proceeding may have collateral estoppel effect on issues of fact presented in a subsequent judicial action. *Pantex Towing Corp. v. Glidewell*, 763 F.2d 1241, 1245 (11th Cir. 1985). Although administrative estoppel is favored as a matter of general policy, its suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 109-10 (1991).

Instead of the usual, defensive, use of collateral estoppel, Landry seeks to apply it offensively. The basic elements of defensive and offensive collateral estoppel are the same:

1) the issue under consideration is identical to that litigated in the prior action;

2) the issue was fully and vigorously litigated in the prior action;

3) the issue was necessary to support the judgment in the prior case; and

4) there is no special circumstance that would make it unfair to apply the doctrine.

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998). The district court has broad discretion to determine whether it would be fair to a defendant to apply offensive collateral estoppel. *Id.* at 392.

There is no case law addressing the preclusive effect of Section 8(f) proceedings, but the Court finds two cases somewhat helpful. In *Enlund v. British Petroleum Oil Co.*, No. 92-0397, 1993 WL 205042 (E.D. La. June 4, 1993) ("*Enlund II*"), the district court examined the question of whether collateral estoppel should prevent an injured worker from bringing a tort claim for alleged injuries to his back and lumbar spine. After a formal hearing for LHWCA benefits, the ALJ found that the worker's on-the-job accident had resulted in cervical injury, but not lumbar and spine injury. *See Enlund v. British Petroleum Oil Co.*, No. 92-0397, 1993 WL 133827 (E.D. La. Apr. 16, 1993) ("*Enlund I*"). LHWCA benefits were awarded only for the cervical injury. There was no appeal. The plaintiff then sought to bring a state law tort claim for his lumbar and spine injury against another party, who argued that the ALJ's determination that there was no lumbar and spine injury should estop the claim. The district court found first that applying collateral estoppel would not promote judicial economy because the plaintiff could not have included the tort defendant in the LHWCA claim proceeding. The court further found "there are critical differences between key elements of a compensation claim and a tort claim which render the imposition of defensive collateral estoppel unfair." *Enlund II*, 1993 WL 205042, *2. Specifically, the presumptions afforded to the claimant in LHWCA proceedings and the burden of proof were different enough to make the issues in the tort case not identical to those considered by the ALJ. *Id.* at *3.

Also informative is the case cited by Landry, *Cooper v. International Offshore*

*Services, LLC*, 390 Fed. Appx. 347 (5th Cir. 2010). In *Cooper*, the injured seaman plaintiff settled his claim for LHWCA benefits and obtained approval of the settlement from the District Director. The settlement agreement approved by the Director released the employer and insurance carrier from all claims of any kind arising out of the injury. The plaintiff then brought suit against the vessel (who was also the employer) pursuant to § 905(b). The court found the claim barred by *res judicata*. The settlement agreement had become the final judgment upon the Director's approval, and the relevant finding of fact therein was that the employer and insurer were "released from liability from workers' compensation benefits, and any and all claims of whatsoever nature." *Cooper v. Int'l Offshore Servs., LLC*, 390 Fed. Appx. 347, 351 (5th Cir. 2010).

Neither of these cases involved an 8(f) application, which is an important distinction. The employer's objective in filing an 8(f) application is indemnification for its liability to the worker, not avoidance or limitation of benefits. The application procedure is nominally a judicial proceeding; the employer supports its application with evidence, and the Director determines the sufficiency of the evidence. But to the extent there are adversaries, they are the employer, who seeks special funds, and the Director, who seeks to protect the funds from non-meritorious claims. The worker's interest in the 8(f) application is minimal and may actually coincide with, rather than oppose, the employer's interest. The Director's findings in an 8(f) procedure are therefore not necessarily facts that were "litigated and decided." The findings are more akin to facts established by stipulation, which are "not 'actually litigated' and thus [

] not a proper candidate for issue preclusion." *United States v. Botefuhr*, 309 F.3d 1263, 1282 (10th Cir. 2002) (citations omitted). "This is particularly so when the stipulation does not manifest an intent to be bound in a subsequent action." *Id.* (citing *Red Lake Band v. United States*, 607 F.2d 930, 934 (Fed. Cl. 1979)). G.C. Constructors expressly stated in its application that its disability arguments were "for purposes of this Application only, and reserving the all [sic] rights to contest disability of any kind should this Application not be approved." Mot. Partial Summ. J. Ex. 4 p.11, ECF No. 34-4.

Furthermore, the issues to be decided in this tort action are not the same as those decided by the Director in regard to the 8(f) application. The measure of damages in a maritime tort case does not rely upon Landry's average weekly wage or whether he is disabled under the statute.

Section 905(b) permits only the assertion of a claim for a maritime tort. *May v. Transworld Drilling Co.*, 786 F.2d 1261, 1264 (5th Cir. 1986). Therefore, a plaintiff must first allege facts comprising a maritime tort - injury on navigable waters and a significant relationship to traditional maritime activity. *Id.* Then he must establish the specific elements of a § 905(b) cause of action: (1) the involvement of a vessel, (2) the negligence of the vessel, and (3) other subsidiary issues, such as the identity of the vessel owner. *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 290 (5th Cir. 2008) (quoting *May*, 786 F.2d at 1264).

"[T]he elements of a maritime negligence cause of action are essentially the

same as land-based negligence under common law." *Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005); *See also Cole v. Noble Drilling Corp.*, No. 1:05cv479 HSO-JMR, 2007 WL 2475944, *5 (S.D. Miss. Aug. 28, 2007) ("General principles of negligence guide the analysis of a maritime tort case."). The plaintiff is owed a duty of ordinary or reasonable care. *McLaurin*, 529 F.3d at 290; *Toler v. S.W. Gaming, LLC*, No. 4:07cv120 P-S, 2009 WL 151281, * 1 (N.D. Miss. Jan. 21, 2009).

If he prevails in his § 905(b) claim, Landry may recover those items of damages which are recoverable under the general maritime law, including monetary recovery for past and future loss of earning capacity and wages, past and future medical expenses, and pain and suffering resulting from an injury caused by the defendant's negligence. *Williams v. Chevron USA, Inc.*, 875 F.2d 501, 506 (5th Cir. 1989); *Baham v. Nabors Drilling USA, LP*, 721 F. Supp. 2d 499, 514-15 (W.D. La. 2010) (citing Thomas J. Schoenbaum, Admiralty and Maritime Law, §§ 7-10 and 5-15 (4th ed. 2004); *Kirksey v. P & O Ports Tex., Inc.*, 488 F. Supp. 2d 579, 591 (S.D. Tex. 2007).

In regard to past and future loss of earning capacity and wages, the Fifth Circuit has directed that:

> calculation of the lost income stream begins with the gross earnings of the injured party at the time of the injury. To this amount other income incidental to work, such as fringe benefits, should be added. From it, the fact-finder should subtract amounts the wage earner would have been required to pay such as income tax and work expenses.

*Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir. 1988) (quoting *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983) (en banc)). Average weekly wage is not a

factor in this calculation.

The same appears true for the issue of "disability." Whether Landry is disabled under the statute is not a question that the jury will consider. Nor do any of the types of damages to which Landry may prove himself entitled involve consideration of whether he is disabled under the LHWCA, where "disability" is an economic, not a medical, concept. *Md. Shipbuilding & Drydock Co. v. Dir., OWCP*, 618 F.2d 1082, 1085 (4th Cir. 1980) ("Degree of 'disability' cannot be measured by physical condition alone, but must be considered with such factors as the injured worker's age, industrial work history, and availability of work which he can perform.")

For these reasons, the Court concludes that it would be inappropriate to give collateral estoppel effect to the Director's Order regarding G.C. Constructors' 8(f) application. The Plaintiff's Motion will be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [34] for Partial Summary Judgment filed by Plaintiff Brian J. Landry is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 18th day of July, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE